IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Troy Zeigler, | ) | C/A No. 0:14-2134-MGL-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Dennis Bush, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Troy Zeigler, a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 27.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Zeigler was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 29.) Zeigler responded in opposition.[1] (ECF No. 47-1.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted and Zeigler's Petition denied.

## BACKGROUND

Zeigler was indicted in July 2001 in Orangeburg County for murder (01-GS-38-776). (App. at 770-71, ECF No. 28-4 at 87-88.) Zeigler was represented by Margaret Hinds, Esquire, and on June 18-21, 2002 was tried before a jury and found guilty as charged. (App. at 702, ECF No. 28-4

---

[1] Zeigler apparently mailed his response to the respondent and did not file it with the court. The respondent subsequently submitted Zeigler's response as an attachment in response to the court's Order.



at 19.) The circuit court sentenced Zeigler to forty-five years' imprisonment. (App. at 727, ECF No. 28-4 at 44.) Zeigler, through counsel, filed a "Motion to Impeach Verdict, Take Testimony of Jurors, & For New Trial." (ECF No. 28-5.) The State filed a response. (ECF No. 28-6.) On July 22, 2002, the circuit court held a hearing on Zeigler's motion. By order filed September 27, 2002, the circuit court denied Zeigler's motion. (ECF No. 28-7.)

Zeigler appealed and was represented by Robert M. Dudek, Esquire, Appellate Defender, who filed a final brief on Zeigler's behalf that presented the following questions:

1.   Whether the trial court erred by refusing to direct a verdict of acquittal where there was not any direct or substantial circumstantial evidence that appellant killed the victim, and evidence appellant was in the general area of where the decedent later was found lying next to the road raised a mere suspicion of his guilt?

2.   Whether the trial court erred by refusing to instruct the jury on "mere presence" since the judge's "hand of one is the hand of all" instruction did not adequately or clearly instruct that mere presence at the scene was insufficient to prove someone guilty of the crime?

3.   Whether the trial court erred by refusing to grant a new trial or at least conduct a further inquiry of the jurors where the record revealed jurors wanted appellant to testify, and the defense presented evidence jurors did consider appellant's right to silence, a fundamental right, while reaching its guilty verdict?

(ECF No. 28-8.) On March 8, 2005, the South Carolina Court of Appeals heard oral argument, and on March 14, 2005 issued an order affirming Zeigler's conviction. State v. Zeigler, Op. No. 2005-UP-188, 2005 WL 7083838 (S.C. Ct. App. Mar. 14, 2005); (see also App. at 859-68, ECF No. 28-4 at 176-85). Zeigler filed a petition for rehearing which was denied on August 26, 2005. (ECF Nos. 28-10 & 28-12.) Zeigler, through counsel, filed a petition for a writ of certiorari on November 17, 2005 which raised the following issues:



1.    Whether the Court of Appeals erred by holding that "mere presence" was adequately charged since the judge's "hand of one is the hand of all" instruction did not adequately or clearly instruct that mere presence at the scene was insufficient to prove someone guilty of the crime?

2.    Whether the Court of Appeals erred by holding the trial judge properly refused to grant a new trial or conduct a further inquiry of the jurors where the record revealed jurors wanted petitioner to testify, and the defense presented evidence jurors did consider petitioner's right to silence while reaching its guilty verdict?

(ECF No. 28-13.)  On January 31, 2007, the South Carolina Supreme Court issued a letter order denying Zeigler's petition for a writ of certiorari.  (ECF No. 28-15.)  The remittitur was issued on February 5, 2007.  (ECF No. 28-16.)

Zeigler filed a *pro se* application for post-conviction relief ("PCR") on July 23, 2005 in which he raised the following claims:

(a)    Ineffective Assistance of Counsel[;]

(b)    Violation of (14th) Fourt[eenth] Amendment Due Process of Law[;]

(c)    Trial Judge Err:  Unlawfully Conviction[.]

(See Zeigler v. State of South Carolina, 05-CP-38-662; App. at 772-78, ECF No. 28-4 at 89-95.) Zeigler filed a second PCR application on December 4, 2007.  (See Zeigler v. State of South Carolina, 07-CP-38-1642; App. at 785-92, ECF No. 28-4 at 102-09.) By order dated May 18, 2008, the two pending PCR actions were merged, with the July application becoming the surviving action and the December application becoming an amendment to the surviving action.  (App. at 796-97, ECF No. 28-4 at 113-14.)  On September 15, 2009, the PCR court held an evidentiary hearing at which Zeigler appeared and testified and was represented by Belinda Davis-Branch, Esquire.  By



order filed March 7, 2011, the PCR judge denied and dismissed with prejudice Zeigler's PCR

application.  (App. at 851-58, ECF No. 28-4 at 168-75.)

On appeal, Zeigler was represented by Kathrine H. Hudgins, Esquire, Appellate Defender,

who filed a petition for a writ of certiorari on Zeigler's behalf that presented the following question:

> Did the PCR judge err in refusing to find counsel ineffective for not moving to sever
> appellant's murder trial from the trial of his co-defendant cousin who, according to
> a witness at trial, believed that the deceased, also a cousin of appellant, was working
> as an informant for the police?

(ECF No. 28-17.)  On March 18, 2014, the South Carolina Court of Appeals issued an order denying

Zeigler's petition for a writ of certiorari.  (ECF No. 28-20.)  The remittitur was issued April 3, 2014.

(ECF No. 28-21.)  This action followed.

## FEDERAL HABEAS ISSUES

Zeigler's federal Petition for a writ of habeas corpus raises the following issues:

**Ground One:**  Whether State Proved Guilt Beyond Reasonable Doubt
**Supporting Facts:**  The State failed to Prove Guilt, when there is no direct or
circumstantial Proving Guilt.  The state trial court and appellate court incorrectly
applied law when viewing facts of this case.  No evidence shows how or what is
cause of death and no witness could say they saw defendant commit this act[.]

**Ground Two:**  Whether Juror Misconduct Tainted Verdict
**Supporting Facts:**  During deliberations the Jurors considered the fact that me and
my co-defendant did not testify and also had sympathy for victim as such court does
not consider that not all of them had same view fact most of them did is considerably
crucial to a fair and Just verdict[.]

**Ground Three:**  Improper Impeachment Of Witnesses
**Supporting Facts:**  The state improperly impeached its own witnesses during trial
and once the witnesses credibility was criticized the verdict is not valid[.]

**Ground Four:**  Defendant's Presence During Juror Note
**Supporting Facts:**  When note was read court did not ensure I was at this stage of
the Process and was not Present until after it was over[.]



**Ground Five:**  Motion to Sever Trial
**Supporting Facts:**  It is clearly shown that shortly after listening to codefendant's
Tape Jury Reached the[ir] verdict[.]

(Pet., ECF No. 1.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine

dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing

to particular parts of materials in the record" or by "showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary

judgment "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving

party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."

Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once

the moving party makes this showing, however, the opposing party may not rest upon mere

allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth

specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## B.    Habeas Corpus Standard of Review

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 582 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover, state court factual determinations are presumed to be correct and the



petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington, 562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."



Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in

judgment)).

## C.    Summary Judgment Motion

### 1.    Relevant Facts Presented at Trial

In reviewing Zeigler's claims on direct appeal, the South Carolina Court of Appeals

summarized the facts presented at trial as follows:

> Gregory McDonald, also know[n] as Boobie, was murdered on January 19,
> 2001, near a trailer on Land Fill Road in Orangeburg County.  On the night of the
> murder, McDonald traveled to the trailer with Larry Zeigler, George Zeigler, and
> Barry Collier.  Troy Zeigler, his cousin Antwan Zeigler, James Hallman, Germaine
> Eric Hallman, and Kenneth Kirk Thomas were already inside the trailer when
> McDonald arrived.
>
> According to Collier, when he entered the trailer, Antwan looked at him as
> if Collier had "done something bad."  Because Antwan and Troy were whispering to
> each other and staring at him, Collier began to feel uncomfortable and decided to exit
> the trailer.  Antwan and Troy attempted to prevent Collier from leaving.  Antwan and
> Troy followed Collier outside.  Collier stated he "felt unsafe."  At that point, Antwan
> and Troy threw "one or two" beer bottles at Collier.  Collier jumped in his vehicle
> and drove away.
>
> Kenneth Kirk Thomas testified Antwan entered the trailer and "told Boobie
> he was the police," meaning McDonald was working for the police as a confidential
> informant.  Troy, Antwan, and the Hallmans surrounded McDonald.  George Zeigler,
> Troy and Antwan's cousin, declared Antwan "told [McDonald] he had to leave" and
> that Antwan and McDonald "got into an argument."  Thomas observed Antwan
> throw a beer bottle at McDonald.  Larry Zeigler, Troy's brother and Antwan's cousin,
> saw Troy and Eric Hallman hit McDonald.  George testified he "thought that
> [Antwan] . . . thr[e]w a punch."  When McDonald attempted to leave, Troy and the
> Hallmans threw bottles at him.  McDonald ran out of the trailer . . . .  Troy, Antwan,
> and the Hallmans followed McDonald.
>
> Approximately ten to fifteen minutes later, Antwan, Troy and the Hallmans
> had not returned.  Thomas, Larry Zeigler, and George Zeigler decided to leave.  As
> the men were leaving the trailer, Thomas saw Antwan and Troy walking back up the
> dirt road toward the trailer from about twenty feet away.  When Thomas, Larry
> Zeigler, and George Zeigler reached "the end of the road," they noticed McDonald's
> body lying facedown on the side of the road. McDonald was not moving.  George
> asked Thomas to stop the car so they could help McDonald.  Thomas refused to help
> and instructed George:  "Don't get yourself in nothing."



Thomas, Larry Zeigler, and George Zeigler drove to the Zeiglers' grandmother's house. Antwan and Troy arrived at the home after the others. Thomas testified Troy said: "I kicked that nigger to death." Antwan responded: "He deserved it." Thomas noted Troy was walking with a limp and that he thought Troy's toe was swollen.

The police, acting on a tip, located McDonald's body in a ditch near the trailer . . . . Dr. Janice Ross, a forensic pathologist, performed the autopsy on McDonald. McDonald had suffered injuries to his eyeballs and both sides of his head, had bruising under the scalp, and bleeding around the brain. Dr. Ross opined McDonald died from "bleeding around the brain . . . due to a beating." McDonald died "within minutes" from this severe beating. Dr. Ross testified the type of injuries sustained by McDonald allowed her to discount an assertion that the injuries were caused by McDonald falling down or being struck by a car. Dr. Ross concluded McDonald's injuries were a result of "blows delivered by someone else." She stated the injuries were consistent with "what [she's] seen caused by fists." The Solicitor asked Dr. Ross: "Would [McDonald's injuries] also have been consistent with him being kicked?" Dr. Ross answered: "It could."

Antwan and Troy were indicted for the murder of McDonald. The case proceeded to trial. At the close of the State's evidence, counsel for Antwan moved for a directed verdict, claiming there was "absolutely no evidence to connect either of these defendants with the murder of Mr. McDonald." Troy's attorney adopted Antwan's lawyer's argument. The State argued the evidence showed "Antwan Zeigler started an altercation in the trailer, hit the deceased, threw a bottle at him, and chased him out of the trailer," along with Troy Zeigler. The trial court denied the motion, finding "the fact that they left right after the victim did, came back without him, very shortly thereafter the body was seen, and we've got . . . statements that . . . one of them kicked him and the other one said he deserved it, would be strong enough circumstantial evidence to make it a jury case."

(State v. Zeigler, Op. No. 2005-UP-188, 2005 WL 7083838, at *1-2 (S.C. Ct. App. Mar. 14, 2005);

see also App. at 860-61, ECF No. 28-4 at 177-78.)  These facts provide additional background in

reviewing Zeigler's claims in the instant Petition.

### 2.    Claims that are not cognizable (Grounds Three and Five)

In Ground Three, Zeigler alleges that the state improperly impeached its own witness during

the trial rendering the verdict invalid.  In Ground Five, Zeigler appears to argue that severance of his

trial was warranted because shortly after listening to his co-defendant's tape recorded statement the



jury reached a verdict.[2]  The respondent argues that neither of these claims are cognizable on federal habeas review as they raise issues of state law.   Zeigler's response does not challenge the respondent's argument that these grounds fail to state cognizable federal habeas claims.

"[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts," Wilson v. Corcoran, 562 U.S. 1, 4 (2010) (emphasis in original), and "it is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").  With regard to Ground Three, "in considering federal habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.' "  Barbe v. McBride, 521 F.3d 443, 452 (4th Cir. 2008) (quoting Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000)).  Upon review of all of the filings in this matter and the record before the court, the court finds that Zeigler cannot demonstrate any unreasonable application of clearly established federal law, or that the alleged evidentiary error, if there even was one, was so extreme as to deny Zeigler a constitutionally fair proceeding.  Cf. Rule 607, SCRE ("The credibility of a witness may be attacked by any party, including the party calling the witness.").  Moreover, this issue was never raised in this context to the state courts, but even if it had been, Zeigler cannot satisfy the standard in Barbe.

---

[2] Neither the court nor the respondent has interpreted these grounds as raising claims of ineffective assistance of counsel, as Zeigler makes no mention of ineffective assistance of counsel in either the actual grounds or the supporting facts in his Petition and specifically requested in a motion to amend his pleadings that any claim of ineffective assistance of counsel be eliminated. (See ECF Nos. 1 & 17.)



Similarly, Zeigler has not shown that his allegations in Ground Five demonstrate an unreasonable application of clearly established federal law. In fact, "[w]hether the trial court erred in denying severance is generally a question of state law that is not cognizable on federal habeas appeal, for a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial." Cummings v. Evans, 161 F.3d 610, 619 (10th Cir. 1998) (internal citations omitted); see also Penza v. Warden, C/A No. 2:07-0518-JFA-RSC, 2008 WL 474236, at *1, *14 (D.S.C. Feb. 20, 2008) (adopting and incorporating report and recommendation finding "[g]enerally, severance is a question of state law not cognizable in federal habeas proceedings"). Zeigler has made no showing of prejudice caused by the joint trial in this case.

Accordingly, the court finds that the respondent's motion for summary judgment should be granted as to Grounds Three and Five of Zeigler's Petition.

### 3. Procedural Default (Grounds One and Four)

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies"). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles



associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

### a.     Ground One

In Ground One, Zeigler alleges that the state failed to prove his guilt beyond a reasonable doubt. In arguing this issue to the South Carolina Court of Appeals, Zeigler alleged that "the trial court erred in denying his motion for a directed verdict because 'there was not any direct evidence or any substantial circumstantial evidence that [Troy] killed [McDonald].' " Zeigler, 2005 WL 7083838, at *2 (alterations in original); (see also ECF No. 28-4 at 178). The respondent concedes that this issue was raised during trial, as well as presented to and ruled on by the South Carolina Court of Appeals. The respondent further concedes that Zeigler was not required to raise any issue to the South Carolina Supreme Court to exhaust his claims pursuant to In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454 (S.C. 1990). However, the respondent contends that because Zeigler filed a petition for rehearing at the South Carolina Court of Appeals followed by a petition for a writ of certiorari with the South Carolina Supreme Court and



chose not to include the Ground One allegation in those petitions, Ground One is procedurally barred from federal habeas review. Notably, the respondent does not point to any authority in a situation akin to Zeigler's supporting a finding that such a claim would be procedurally barred from federal habeas review. Cf. id. at 454 (holding that "when the claim has been presented to the Court of Appeals *or* the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies") (emphasis added). However, even assuming that the respondent is correct, the court may still proceed to deny Zeigler's claims in Ground One on the merits. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003) (stating that "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits") (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)).

Claims of sufficiency of evidence are cognizable on collateral review. However, "a federal court's review of such claims is 'sharply limited.' " Wilson v. Greene, 155 F.3d 396, 405 (4th Cir. 1998) (quoting Wright v. West, 505 U.S. 277, 296 (1992)). "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." Wilson, 155 F.3d at 405-06 (citing Wright, 505 U.S. at 292).

When reviewing the sufficiency of the evidence to support a conviction, the critical inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also McDaniel v. Brown,



558 U.S. 120, 133 (2010) (*per curiam*) ("Jackson requires a reviewing court to review the evidence 'in the light most favorable to the prosecution.' ") (quoting Jackson, 443 U.S. at 319). Where there are conflicting inferences, the reviewing court must presume " 'that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " McDaniel, 558 U.S. at 133 (quoting Jackson, 443 U.S. at 326). In evaluating a Jackson sufficiency of the evidence claim in a federal habeas petition, the relevant inquiry is "whether a state court determination that the evidence was sufficient to support a conviction was an objectively unreasonable application of [the standard enunciated in] Jackson." Williams v. Ozmint, 494 F.3d 478, 489 (4th Cir. 2007) (internal quotations and citations omitted) (alterations in original); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (*per curiam*); McDaniel, 558 U.S. at 133-34 (evaluating a Jackson claim in accordance with the standard of review set forth in § 2254(d)(1)).

    In affirming the trial court's denial of Zeigler's motion for a directed verdict, the South Carolina Court of Appeals found as follows:

> In the instant case, the record provides substantial circumstantial evidence reasonably tending to prove Troy's guilt. Viewed in the light most favorable to the State, there was substantial circumstantial evidence to submit the murder charge to the jury. Antwan accused McDonald of working for the police and told him he had to leave the trailer. Antwan and McDonald then "got into an argument." Thomas saw Antwan throw a beer bottle at McDonald. Larry Zeigler observed Troy and Eric Hallman hit McDonald. George Zeigler stated he "thought that [Antwan] . . . thr[e]w a punch." When McDonald attempted to leave, Troy and the Hallmans threw bottles at him. McDonald ran out of the trailer onto Land Fill Road. Troy, Antwan, and the Hallmans pursued McDonald. Approximately ten to fifteen minutes later, when Thomas, Larry Zeigler, and George Zeigler decided to leave the trailer, Antwan, Troy and the Hallmans had not returned. As the three men left the trailer, Thomas noticed Antwan and Troy walking back up the dirt road toward the trailer from about twenty feet away. At "the end of the road," Thomas, Larry Zeigler, and George Zeigler observed McDonald's body lying motionless facedown on the side of the road. Importantly, there was a specific window of about ten to fifteen minutes from the time (1) McDonald ran out of the trailer; (2) he was chased by Troy and Antwan; (3)



> he suffered a severe beating; (4) Thomas saw Antwan and Troy walking back up the dirt road toward the trailer; and (5) McDonald was seen lying motionless on the side of the road. The pathologist confirmed McDonald died "within minutes" from bleeding around the brain due to a beating. Later that night, at the Zeiglers' grandmother's house, Troy informed Thomas: "I kicked that nigger to death." Antwan then stated: "He deserved it." Thomas noted Troy was limping and that he thought Troy had a swollen toe.

State v. Zeigler, No. 2005-UP-188, 2005 WL 7083838, *5 (S.C. Ct. App. Mar. 14, 2005); (see also App. at 863-64, ECF No. 28-4 at 180-81).

Upon review of the record, viewing the evidence in the light most favorable to the prosecution and resolving any conflicting inferences in favor of the prosecution, the court concludes that Zeigler cannot demonstrate that there was insufficient evidence at trial from which any rational trier of fact could have found that Zeigler was guilty of murder as defined under state law beyond a reasonable doubt. See Jackson, 443 U.S. at 319; see also McDaniel, 558 U.S. at 133-34; S.C. Code Ann. § 16-3-10.

Zeigler appears to simply continue to challenge the rulings by the trial court and the court of appeals. However, the relevant question is whether viewing the evidence presented in the light most favorable to the prosecution "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. The court finds that Zeigler has failed to demonstrate that the state court's decision was so fundamentally unfair that it resulted in a denial of due process. See 28 U.S.C. § 2254(a) (stating that a writ of habeas corpus is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"). As Zeigler has failed to show that there was no reasonable basis for the state appellate court's decision finding no error by the trial court in denying Zeigler's motion for a directed verdict, he cannot demonstrate that the appellate decision was an "objectively unreasonable



application of [the standard enunciated in] <u>Jackson</u>." <u>Williams</u>, 494 F.3d at 489; <u>see also</u> 28 U.S.C.

§ 2254(d)(1).   Accordingly, Zeigler is not entitled to habeas relief on Ground One and the

respondent's motion for summary judgment should be granted as to this ground.

      **b.**    **Ground Four**

      The respondent also argues that Zeigler's allegations in Ground Four—alleging that he was

denied the right to be present when a juror note was read—is procedurally barred from federal habeas

review.  Zeigler does not appear to respond or otherwise challenge this argument.

      Upon review of the record, the court agrees that this issue was not raised in Zeigler's direct

appeal, and even if it had been, it was not raised at trial and therefore was not preserved under state

procedural rules for state appellate review during Zeigler's direct appeal.  <u>See</u> <u>State v. Owens</u>, 664

S.E.2d 80 (S.C. 2008) (holding that the appellant's confrontation clause challenge was not preserved

for appellate review where no confrontation clause challenge was raised at trial); <u>State v. Williams</u>,

401 S.E.2d 168 (S.C. 1991) (stating that generally issues not raised to and ruled on by the trial court

are not preserved for appellate review); <u>see also</u> <u>Picard v. Connor</u>, 404 U.S. 270, 275-76 (1971)

(stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the

state courts" to give the state courts "the first opportunity to hear the claim sought to be vindicated

in a federal habeas proceeding"); <u>Longworth</u>, 377 F.3d at 448 (stating to exhaust his available state

court remedies, a petitioner must "fairly present[ ] to the state court both the operative facts and the

controlling legal principles associated with each claim," *i.e.*, "the ground must be presented face-up

and squarely") (internal quotation marks and citation omitted).

      While the court finds that Ground Four is procedurally defaulted from federal habeas review,

such claims may nonetheless be considered by a federal court if the petitioner can "demonstrate



cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. A petitioner may establish a fundamental miscarriage of justice by showing that he is actually innocent of the crime for which he was convicted. However, to establish "actual innocence," a petitioner must produce new reliable evidence that was not presented at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999); see also Schlup v. Delo, 513 U.S. 298, 324, 327 (1995) (stating that to demonstrate "actual innocence," a petitioner must present "new reliable evidence . . . that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt"). Zeigler's response in opposition to the respondent's motion for summary judgment provides no arguments to meet this standard and fails to demonstrate that, based on any new reliable evidence, it is more likely than not that no reasonable juror would have found him guilty. See Schlup, 513 U.S. at 327-29. Accordingly, Ground Four is procedurally barred from federal habeas review, and the respondent's motion for summary judgment should be granted as to that ground.

### 4. Ground Two

In Ground Two, Zeigler contends that juror misconduct tainted the verdict. Specifically, he argues that during deliberations, the jurors considered the fact that neither he nor his co-defendant testified during the trial. In finding no error by the trial court in refusing to take sworn juror testimony and denying Zeigler's motion for a new trial based on allegations of juror misconduct, the state court of appeals first discussed the applicable law regarding juror misconduct, the limitations on juror testimony to impeach a jury verdict, and the differences between extraneous information or influence and internal misconduct. State v. Zeigler, No. 2005-UP-188, 2005 WL 7083838, *7-9



(S.C. Ct. App. Mar. 14, 2005); (see also App. at 865-67; ECF No. 28-4 at 182-84). After finding that

alleged misconduct in this case was internal, the Court of Appeals observed the following:

> After a three-day trial, the judge submitted the case to the jury. On the second morning of deliberations, the jury sent the trial court a note, asking: "Is it a possibility that the defendants go under oath and tell their side of the story?" After a brief discussion with counsel for Antwan and Troy, the trial court instructed: "[W]e cannot receive new evidence at this time. Please remember that you should not consider the fact that defendants did not testify." Counsel for Antwan and Troy concurred in the instruction. The jury resumed deliberations and returned a guilty verdict as to both defendants. Attorneys for Antwan and Troy moved for a new trial, arguing the jury "made it clear that they were considering things that [the trial court] specifically instructed them not to consider when they sent out the note saying that they wanted testimony from the defendants. Clearly, they were considering whether the defendants testified or not." The trial court denied the motion.
>
> Lawyers for both Antwan and Troy filed a joint motion to impeach the verdict, take sworn testimony of jurors, and for a new trial. At the hearing, it was argued that the jurors "were basing their verdict, many of them, on the fact that the Zeiglers did not testify." The trial court considered the statements taken from the jurors by investigators hired by the Zeiglers, even though the statements were not sworn affidavits. The court ruled: "I just don't see any evidence that this jury made its decision based on an improper consideration of the defendants failing to testify."
>
> Initially, we note that at the end of the trial the judge gave a detailed charge to the jury instructing them not to consider the fact that the defendants did not testify:
>
> . . . .
>
> The judge reiterated this principle in a charge after receipt of the jury note.
>
> Investigators for Antwan and Troy contacted eight jurors. Seven of the jurors provided statements, not affidavits, to the investigators. Three of the jurors expressed very clearly they based their decision in the case on the evidence presented at trial only. Although the other four jurors who provided statements all professed they thought the defendants should have testified, none of the jurors stated that was the reason they found the defendants guilty. Each of the four jurors declared their decision was based upon the evidence presented by the State at trial. The statements given by the four jurors support the trial court's finding that further investigation was not merited.

Id. at *9-10; (App. at 867-68; ECF No. 28-4 at 184-85).



Although the appellate court decision "reflects a total dependence of state evidentiary rule and state precedent, such precedent references the 'Sixth and Fourteenth Amendments to the United States Constitution' and the right to 'a fair trial by a panel of impartial and indifferent jurors' "; therefore, the respondent concedes that Zeigler appears to have referenced a cognizable issue. (Respt.'s Mem. Supp. Summ J. at 19; ECF No. 28 at 19) (citations omitted).  However, upon review of the record, the court concludes that Zeigler cannot demonstrate that the decision of the state court of appeals on these issues was "contrary to, or involved an unreasonable application of clearly established federal law" as decided by the United States Supreme Court.  Williams, 494 F.3d at 489; 28 U.S.C. § 2254(d)(1).  In fact, "the Sixth Amendment does not require that all evidence introduced by the defendant tending to impeach the jury's verdict be considered by the courts."  Robinson v. Polk, 438 F.3d 350, 359 (4th Cir. 2006) (citing Tanner v. United States, 483 U.S. 107, 117 (1987)). "In fact, the common-law rule generally 'prohibited the admission of juror testimony to impeach a jury verdict.' "  Id. (quoting Tanner, 483 U.S. at 117); see also McDonald v. Pless, 238 U.S. 264, 267-68 (1915) ("But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.").  However, "[l]ike the common law, the Federal Rules of Evidence and the [South] Carolina Rules of Evidence contain an



exception to this general rule when 'extraneous prejudicial information' is improperly brought to the jury's attention or when an 'outside influence [is] improperly brought to bear upon any juror.' " Robinson, 438 F.3d at 360 (alteration in original); Rule 606(b), SCRE. In light of the internal nature of the alleged misconduct, Zeigler has failed to show that there was no reasonable basis for the state appellate court's decision finding no error by the trial court. See Robinson, 438 F.3d at 363 ("Tanner thus establishes that the Sixth Amendment's guarantees do not require judicial consideration of juror allegations regarding influences internal to the deliberation process. Under clearly established Supreme Court case law, an influence is not an internal one if it (1) is extraneous prejudicial information; *i.e.*, information that was not admitted into evidence but nevertheless bears on a fact at issue in the case, or (2) is an outside influence upon the partiality of the jury, such as 'private communication, contact, or tampering . . . with a juror.' ") (internal citations and footnotes omitted); cf. Tanner, 483 U.S. at 118 (observing that "under a rigid locational distinction [in determining whether an influence is external or internal] jurors could be regularly required to testify after the verdict as to whether they heard and comprehended the judge's instructions, since the charge to the jury takes place outside the jury room. Courts wisely have treated allegations of a juror's inability to hear or comprehend at trial as an internal matter."). Moreover, Zeigler has failed to point to any clearly establish federal law that the state courts unreasonably misapplied. Thus, the respondent's motion for summary judgment should be granted as to Ground Two.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 27) be granted and Zeigler's Petition denied.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 19, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).